UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND


GENE MITCHELL                          :
                                       :
        v.                             :        C.A. No. 06-521T
                                       :
MICHAEL J. ASTRUE                      :
Commissioner of Social Security        :


## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge


This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint on November 30, 2006 seeking to reverse the decision of the Commissioner.  On June 22, 2007, Plaintiff filed a Motion to Reverse Without or, Alternatively, With a Remand for a Rehearing the Commissioner's Final Decision.  (Document No. 7).  On July 19, 2007, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner.  (Document No. 8).  Plaintiff replied on **[August 3, 2007]**.  **(Document No. 9)**.

This matter has been referred to me for preliminary review, findings and recommended disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that the Plaintiff is not disabled within the meaning of the Act.  Consequently, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 8) be GRANTED and that the Plaintiff's Motion to

Reverse Without or, Alternatively, With a Remand for a Rehearing the Commissioner's Final Decision (Document No. 7) be DENIED.

## I.     PROCEDURAL HISTORY

Plaintiff filed an application for DIB on March 4, 2004, alleging disability as of April 2, 2003. (Tr. 54-56). The application was denied initially (Tr. 33, 35-37) and on reconsideration. (Tr. 34, 40-42). Plaintiff requested an administrative hearing. On March 16, 2006, Administrative Law Judge Barry H. Best ("ALJ") held a hearing at which Plaintiff, represented by counsel, Plaintiff's wife and a vocational expert ("VE"), appeared and testified. (Tr. 350-379). The ALJ issued a decision on June 20, 2006 finding that Plaintiff was not disabled. (Tr. 13-27). The Appeals Council denied Plaintiff's request for review on October 3, 2006. (Tr. 8-10, 12). A timely appeal was then filed with this Court.

## II.     THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's evaluation of the expert medical opinion of Dr. Susan Diaz Killenberg, a DDS psychiatrist, is legally and factually inadequate. Plaintiff also argues that the ALJ erroneously failed to provide controlling weight to the opinion of Dr. Keith Rafal, Plaintiff's treating physician, in violation of the treating physician rule. Plaintiff further argues that the ALJ also erred in finding that Plaintiff's allegations of pain and fatigue are not totally credible. Finally, Plaintiff argues that the ALJ failed to provide proper weight to the testimony of Plaintiff's wife.

The Commissioner disputes Plaintiff's claims and argues that the ALJ properly assessed the credibility of Plaintiff's subjective complaints and the supporting testimony of his wife. The Commissioner further argues that the ALJ properly considered the opinions rendered by the DDS medical sources and those rendered by Plaintiff's treating physician.

### III.     THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

-5-

by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.      Developing the Record**

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.   However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C.      Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D.      The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled.   20 C.F.R. § 404.1520(b).   Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

### E.     Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)    Treatment, other than medication, for relief of pain;
>
> (5)    Functional restrictions; and
>
> (6)    The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.      Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### V.      APPLICATION AND ANALYSIS

Plaintiff was fifty years old on the date of the ALJ's decision.  (Tr. 54).  Plaintiff received a high school equivalency diploma (Tr. 72, 355) and worked as a warehouse manager and truck driver.  (Tr. 67, 356).  Plaintiff alleges disability due to obstructive sleep apnea, excessive daytime sleepiness, fatigue and fibromyalgia.  (Tr. 63, 66, 94, 354, 358).

On April 26, 2004, Dr. Edward R. Hanna, a Disability Determination Services ("DDS") physician, opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds

frequently; stand, walk, and/or sit for six hours in an eight-hour workday; push/pull without limitation; occasionally climb, balance, stoop, kneel, crouch, and crawl; and that he had to avoid concentrated exposure to extreme cold and heat, wetness, pulmonary irritants and workplace hazards.  (Tr. 142-143, 145).

On May 25, 2004, Dr. Louis Turchetta performed a consultative psychological evaluation of Plaintiff (Tr. 150-155), who, upon exam, had adequate fine motor skills, speed of motor operation, persistence to tasks and comprehension and judgment of social situations; an adequate attention span and ability to follow directions; an abstract thought process; normal thought progression; average intelligence and immediate and long-term memory; a mild to moderate level of discomfort; and the ability to handle his funds.  (Tr. 150, 153-155). Plaintiff was diagnosed with a mood disorder and a Global Assessment of Functioning (GAF) score of 55.[1]  (Tr. 154).

On June 15, 2004, Dr. Susan Diaz Killenberg completed a Psychiatric Review Technique Form ("PRTF"), in which she opined that Plaintiff suffered from an affective disorder that resulted in mild limitations in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence and pace; and no episodes of decompensation.  (Tr. 178, 181, 188).  Dr. Killenberg also completed a Mental Residual Functional Capacity Assessment, in which she opined that Plaintiff had some moderate limitations (Tr. 172-173) that allowed him to understand and recall simple instructions; carry out simple tasks for two-hour periods during an eight-hour workday without supervision; perform tasks at a sufficient pace when those tasks were not highly time-pressured; make simple, work-related decisions; interact with

_____

[1] The GAF scale judges an individual's level of functioning at the time of evaluation.  See American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 30 (4th ed. 1994). A GAF of 51-60 would indicate moderate symptoms or moderate difficulty in social, occupational or school functioning. See id. at 32.

the public and coworkers in an appropriate manner; respond appropriately to supervision; be aware of hazards; plan for simple tasks; and drive or use public transportation to travel to work. (Tr. 176). Dr. Killenberg further opined that Plaintiff would likely miss one to three days of work per month "due to low energy, disrupted sleep," and that he would be slow to respond to work changes. Id.

On September 27, 2004, Dr. J. Stephen Clifford, a DDS psychologist, completed a PRTF, in which he opined that Plaintiff suffered from a non-severe affective disorder that resulted in no limitations in activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence and pace; and no episodes of decompensation. (Tr. 230, 233, 240).

On October 7, 2004, Dr. John Bernardo, a DDS physician, opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand, walk, and/or sit for six hours in an eight-hour workday; push/pull without limitation; frequently balance; occasionally stoop, kneel, crouch and climb ramps and stairs; never crawl or climb ladders, ropes or scaffolds; and that he had to avoid concentrated exposure to extreme cold and heat, wetness, humidity and pulmonary irritants, and even moderate exposure to hazards. (Tr. 247-248, 250).

On March 21, 2005, Dr. Rakesh Gupta reported that Plaintiff's sleep apnea and restless leg syndrome were being adequately treated, and he recommended that Plaintiff increase his physical activity by participating in a regular exercise program or physical therapy. (Tr. 307-308).

On August 1, 2005, Dr. Ronald W. Thebarge performed a psychological evaluation of Plaintiff (Tr. 268-273), who, upon exam, had logical and goal directed thoughts; no evidence of a thought disorder; a full affect; intact judgment and adequate insight. (Tr. 271). Dr. Thebarge diagnosed Plaintiff with an adjustment disorder, a pain disorder and a GAF of 60. (Tr. 272).

On February 10, 2006, Dr. Keith W.L. Rafal confirmed a prior diagnosis of fibromyalgia and opined that a consistent daily job was not a practical goal for Plaintiff at that time. (Tr. 322).

Plaintiff testified that he could not work because he had fatigue, pain and arm and wrist numbness. (Tr. 358, 364, 366-369). He stated that he could lift twenty pounds occasionally, stand for a limited period of time and walk for no more than five minutes before having to rest. (Tr. 363-364, 370). Plaintiff testified that his daily activities consisted of making sure his children got to school, reading the newspaper, walking his dog, preparing dinner, doing laundry, shopping, visiting his mother and watching television. (Tr. 361-363, 370).

Plaintiff's wife testified that he was irritable and had problems with memory and concentration. (Tr. 372-373).

The ALJ asked the VE to assume a person with Plaintiff's age, education and work experience, who could perform light work that involved simple work activities over an eight-hour workday, with breaks every two hours. (Tr. 376). The VE testified that such a person could not perform Plaintiff's past relevant work, but could perform other work as a hand packer, assembler and production inspector. (Tr. 376).

The ALJ found that Plaintiff had "severe" sleep apnea, fibromyalgia, pain disorder and mood disorder but not of listing-level severity. (Tr. 25, Findings 3 and 4). The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of light work with certain moderate non-exertional impairments. (Tr. 26, Finding 6). The ALJ decided this case adverse to Plaintiff at Step 5 based on the VE's testimony that Plaintiff's RFC permitted him to perform a significant number of jobs available in the regional economy. Id., Finding 12.

**A.     The ALJ Properly Evaluated the Testimony of Plaintiff and His Wife**

Both Plaintiff and his wife testified before the ALJ. The ALJ found that Plaintiff's "subjective statements" about his limitations were "overstated" and "less than fully credible." (Tr. 22). The ALJ explained the reasons for this adverse credibility determination, (Tr. 22-23), and, as discussed below, those reasons are supported by the record. As to Plaintiff's wife, the ALJ did not expressly discuss her testimony other than to mention that she testified (Tr. 16) and to discuss certain evidentiary "inconsistencies" contained in the record about which she testified. (Tr. 23). Plaintiff's wife's testimony was very brief. (Tr. 371-374). She testified that Plaintiff's mood and ability to concentrate worsened after October of 2002, (Tr. 372-373), and that Plaintiff did not work on the boiler in their house or his boat as reported in the medical records. (Tr. 384).

Plaintiff has not shown any error in the ALJ's evaluation of his or his wife's testimony. Plaintiff testified that he becomes "completely drained" after "any type of physical activity" including "just walking." (Tr. 358). Plaintiff further testified that he does not "leave the yard" on "a lot of days" but then indicated that he frequently visited his mother at the time and did "very limited" driving to "run to the store" or pick up his sons if the "school calls." (Tr. 362). The ALJ accurately noted these inconsistencies (Tr. 23) and it was within his province to weigh them against Plaintiff's credibility.

As to his boat, Plaintiff testified that he had not used it in three years (Tr. 363), and his wife reiterated that Plaintiff had stopped boating since he became ill and that she had not "seen him" work on his boat since 2002. (Tr. 374). However, as accurately noted by the ALJ, the medical records indicate that Plaintiff reported working on his boat in July 2005 (Tr. 268) and working on a boiler system at home in October 2005. (Tr. 276). At the ALJ hearing, Plaintiff did not, under oath, deny that he engaged in these activities or that he reported them to his doctor. Rather,

-15-

Plaintiff's wife testified that she had not "seen him" work on his boat since 2002 and that their landlord had a new boiler installed but Plaintiff only watched the installation and did not work on the boiler. (Tr. 374). Given the lack of a direct denial from Plaintiff and the clear entry in the progress notes of Plaintiff's psychotherapist, Dr. Thebarge, that Plaintiff "stated that he was <u>working</u> on a boat and kneeling a lot," (Tr. 268, emphasis added), and "described how, a week ago Saturday and Sunday, he was <u>working</u> on boiler system at home," (Tr. 276, emphasis added), the ALJ cannot be faulted for evaluating and weighing the inconsistency between that evidence and Plaintiff's testimony as to his functional limitations. Finally, the ALJ found that Plaintiff's alleged limitations were "not substantiated by competent medical evidence to the degree alleged" (Tr. 22) and adequately explained his reasoning. (Tr. 23). Since the ALJ's reasons for not fully crediting Plaintiff's testimony and, by inference, the testimony of his wife, are supported by the record, Plaintiff has shown no error, and the ALJ's adverse credibility determination is entitled to deference.

### B.      The ALJ Properly Evaluated the Medical Evidence

Plaintiff contends that the ALJ did not properly evaluate the opinion of Dr. Diaz Killenberg. (Ex. 8F). In particular, Plaintiff faults the ALJ for not discussing that portion of Dr. Diaz Killengerg's June 15, 2004 opinion which indicated Plaintiff was "likely to miss 1-3 days of work per month due to low energy, disrupted sleep." (Tr. 176). In his decision, the ALJ gave "significant weight" to Dr. Diaz Killenberg's finding that Plaintiff had "moderate impairment in concentration, persistence and pace" (Tr. 21) and incorporated that non-exertional limitation into his RFC assessment. (Tr. 26, Finding 6).

Plaintiff argues that Dr. Diaz Killenberg's opinion as to "likely" missed workdays is "critical evidence" (Document No. 7 at p. 8) because the VE testified that available work would be precluded

if Plaintiff "required periods of recumbent rest each day or several occasions each week for an hour or more." (Tr. 378). Plaintiff is comparing apples to oranges. The VE stated that work would be precluded if Plaintiff had to lie down and rest at work for at least one hour every workday or most workdays. Dr. Diaz Killenberg opined, on June 15, 2004, that Plaintiff would likely miss one to three workdays per month. It does not necessarily follow from the VE's testimony that he would also find that the second attendance limitation precludes work, and Plaintiff provides no legal or factual support for that leap. Neither the ALJ nor Plaintiff's counsel posed a hypothetical to the ALJ that included the attendance limitation opined by Dr. Diaz Killenberg. In fact, Plaintiff's counsel declined the opportunity to examine the VE at the ALJ hearing.

Even if Plaintiff's argument had superficial merit, it cannot be considered in a vacuum. When Dr. Diaz Killenberg rendered her opinion, she noted that Plaintiff was suffering from sleep apnea and that "disrupted sleep" would be a cause of the work absences. (Tr. 176). However, on March 21, 2005, Dr. Gupta, Plaintiff's sleep doctor, opined that Plaintiff's sleep apnea was "adequately treated" with a CPAP machine. (Tr. 307). Further, Plaintiff testified that the CPAP machine helped his sleep apnea and that he only sees Dr. Gupta yearly now "because the machine's doing its job." (Tr. 360). Thus, since Plaintiff's sleep apnea improved after Dr. Diaz Killenberg rendered her opinion in June 2004, one of the primary bases, i.e., disrupted sleep, for her work attendance prediction had been resolved. Plaintiff has shown no error in the ALJ's failure to include a limitation in Plaintiff's RFC that he would likely miss between twelve and thirty-six workdays per year due to disrupted sleep. Further, Dr. Diaz Killenberg was the only medical source who rendered this or a similar opinion. The ALJ's RFC assessment is supported by the record and entitled to deference.

-17-

Finally, Plaintiff argues that the ALJ violated the treating physician rule by not assessing controlling weight to the opinion of Dr. Rafal.  Plaintiff began treating with Dr. Rafal on January 5, 2005.  (Tr. 255).  Dr. Rafal initially determined that "based upon ACR guidelines and criteria, [Plaintiff] did <u>not</u> meet formal criteria for a diagnosis of fibromyalgia...." (Tr. 257, emphasis added). At a follow-up appointment on March 8, 2005, Dr. Rafal found additional "tender points" on Plaintiff and opined "[a]t this time [Plaintiff] at this point does appear to meet on today's examination criteria for a diagnosis of fibromyalgia along with chronic fatigue...."  (Tr. 260). Thereafter, Plaintiff saw Dr. Rafal approximately every two months for the remainder of 2005 and into 2006.  (Tr. 259-267, 305-306, 323-324).  On February 10, 2006, Dr. Rafal sent a letter to Plaintiff's counsel presumably for use at the upcoming ALJ hearing.  (Tr. 322).  In that letter, Dr. Rafal reiterated his fibromyalgia diagnosis and opined that "[g]iven his ongoing presenting symptoms it is unlikely that a significant change in his medical and functional status will occur in the near term to make a consistent daily job a practical goal for him at this time."  <u>Id.</u>

In his decision, the ALJ discussed Dr. Rafal's records (Tr. 19) and concluded that "[t]he medical evidence indicates that [Plaintiff] has – fibromyalgia" and that such impairment is "severe" within the meaning of 20 C.F.R. § 404.1520(c).  (Tr. 20, 25 at Finding 3).  The ALJ also discussed Dr. Rafal's February 10, 2006 opinion that "a consistent daily job [was not] a practical goal for [Plaintiff] at this time."  (Tr. 322).  The ALJ declined to give controlling weight to that opinion for three reasons.  In particular, the ALJ determined that the opinion was (1) inconsistent with, and not supported by, other evidence of record; (2) largely based on Plaintiff's subjective complaints which, as noted above, the ALJ did not find fully credible; and (3) made as to an issue, <u>i.e.</u>, the ultimate question of disability, reserved to the ALJ.  (Tr. 22); <u>see also</u> 20 C.F.R. § 404.1527(e).

Because a treating physician is typically able to provide a detailed longitudinal picture of a patient's impairments, an opinion from a treating source is generally entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence of record.  20 C.F.R. § 404.1527(d); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors."). The amount of weight to which a treating source opinion is entitled depends in part on the length of the treating relationship and the frequency of the examinations. 20 C.F.R. § 404.1527(d)(1). If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given. 20 C.F.R. § 404.1527(d)(2).  In this case, the ALJ provided adequate reasons for his refusal to fully credit Dr. Rafal's opinion, and since such reasons are probative and supported by the record, the ALJ's conclusion is entitled to deference.  See Rivera-Torres v. Sec'y of Health and Human Servs., 837 F.2d 4, 5 (1st Cir. 1988) (resolution of evidentiary conflicts is within the province of the ALJ).

Plaintiff's counsel makes a frustrated plea on behalf of her client that concludes with: "America must do better than this for its disabled citizens." (Document No. 7 at pp. 15-16).  While Plaintiff's counsel's zealous advocacy is admirable, Plaintiff simply has not established any reversible error on the ALJ's part.  The issue before this Court is not whether it would have reached the same result as the hearing officer; the issue is whether the ALJ's findings are supported by substantial evidence and whether the ALJ correctly applied the law.

Plaintiff argues that Dr. Rafal's opinion should be given controlling weight because he based his fibromyalgia diagnosis on the presence of a specified number of "tender points."[2]  (Document No. 7 at p. 13).  Plaintiff's argument misses the point.  The ALJ did not reject Dr. Rafal's fibromyalgia diagnosis.  In fact, the ALJ concluded that Plaintiff was suffering from fibromyalgia, and his RFC limited Plaintiff to light work with additional moderate non-exertional limitations in concentration.  The ALJ merely rejected Dr. Rafal's opinion of total disability based on his review of the entirety of the medical evidence and in view of his determination that the extent of Plaintiff's subjective complaints was less than fully credible.  The ALJ's conclusions are supported by the record and entitled to deference.

## VI.    CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 8) be GRANTED and that Plaintiff's Motion to Reverse Without or, Alternatively, With a Remand for a Rehearing the Commissioner's Final Decision (Document No. 7) be DENIED.  I further recommend that the District Court enter Final Judgment in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-

---

[2]  Plaintiff cites Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996), for the proposition that "tender points" are the "only verifiable finding" of fibromyalgia.  While the Sarchet case supports that general point, it is otherwise not supportive of Plaintiff's position.  In Sarchet, the Court noted that fibromyalgia's symptoms are "entirely subjective" and that "all these symptoms [including tender points] are easy to fake."  Id.  Finally, it noted that "most" people suffering from fibromyalgia are not totally disabled from working and that the issue presented was whether the claimant was "one of the minority" who is totally disabled.  Id.

Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605

(1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
August 6, 2007